THE NATIONAL BANK OF NORWALK, RESPONDENT *v.* CHARLES LANIER, WILLIAM FULLERTON AND JOHN GREEN, IMPLEADED WITH ROBERT W. MILBANK AND OTHERS, APPELLANTS.

*Defective mortgage — lien of in equity — good for antecedent debt — not affected by taking subsequently another, and not relinquishing the first.*

A court of equity looks upon things agreed to be done as actually performed. A defective mortgage given to secure an antecedent debt can be sustained in equity so as to make it a prior lien to subsequent judgments.

The subsequent taking of another bond with an additional obligor and a mortgage on the same premises, for the purpose of obtaining additional security, without relinquishing the security first given, does not alter the equitable rights of the parties.

APPEAL from a judgment of foreclosure and sale, made in the above action and entered in the Dutchess county clerk's office, August 19, 1875, on the report of a referee.

The referee, among other things, found that the defendant Robert W. Milbank, on the 28th of March, 1873, executed and delivered to the plaintiff a bond in the penalty of $20,000, and as collateral security for the payment of the said indebtedness, the defendant Robert W. Milbank and Antoinette L. Milbank, his wife, on the same day executed and delivered to the plaintiff, an indenture of mortgage (foreclosed in this action), whereby they granted, bargained and sold to the plaintiff certain real estate. That the said mortgage was, together with the said bond, delivered by the said R. W. Milbank to the plaintiff as early as the 2d or 3d of April, 1873, but the said mortgage has not been recorded. (This finding, so far as it related to the time of delivery, was excepted to by the defendant, who claimed that the delivery did not take place till April sixteenth or seventeenth.)

That the said defendants, Robert W. Milbank and Antoinette L. Milbank his wife, have failed to comply with the condition of the said bond and mortgage, and have not paid the said principal sum of $10,000, which became due and payable on the 28th day of March, 1874.

That at the time of the delivery of the said bond and mortgage to the plaintiff, as aforesaid, the said Robert W. Milbank and his brother, Isaac M. Milbank, were indebted to the plaintiff in the sum of $10,000 and upwards, on promissory notes made by the said R. W. Milbank, drawn payable to the order of, and indorsed by, said Isaac M. Milbank, which were past due and had been duly protested for non-payment.

The plaintiff applied to said R. W. Milbank for security for the payment of $10,000 of the said indebtedness; and thereafter, and on the 24th of March, 1873, the said R. W. Milbank, by letter addressed by him to the plaintiff's cashier, R. B. Crawford, made an offer to furnish such security in the words following, namely: "I have talked with my brother on the subject and now offer you a mortgage at one year, upon my farm at Rhinebeck, as security for any indebtedness to the bank. I paid $25,000 in cash for this farm, apart from the $100,000 for the mining rights, and it remains intact, with the exception of 500 lineal feet on a quartz vien, and two acres of land deeded to the Empire State Mining Company.

There is a mortgage of $3,500 only upon it, and there are no taxes or assessments due from me."

This offer was received by the plaintiff on the day of its date, or early on the next day, and was accepted by the plaintiff, and the defendant R. W. Milbank was duly and promptly notified thereof.

The said R. W. Milbank, with a view to comply with the said offer on his part, sent to the said plaintiff the said bond and mortgage, and with them also sent to the plaintiff, in a letter addressed by him to plaintiff's said cashier, three promissory notes, each signed by said R. W. Milbank. The plaintiff, immediately on the receipt of the said bond and mortgage and the said three promissory notes, discounted the said three notes, and applied the proceeds thereof to pay the said overdue notes made by said R. W. Milbank, and indorsed by Isaac M. Milbank, then held and owned by the plaintiff as aforesaid, and canceled the last said notes.

The plaintiff wishing to secure the continuing liability of said Isaac M. Milbank for the payment of the said debt, subsequently notified said R. W. Milbank that another bond must be made with Isaac M. Milbank's name on it, and that Judge LAWRENCE had the papers and referred said R. W. Milbank to him. The first bond and mortgage were left by the plaintiff with Judge LAWRENCE, on the 20th of April, 1873, for the purpose of having him see to it, that whatever was necessary and proper to be done to effect the object, so as aforesaid communicated by the bank to R. W. Milbank, was done. Judge LAWRENCE caused a new bond and mortgage to be drawn to the plaintiff of the same date each as the first bond and mortgage and substantially like them in all respects, except that in the new bond the said Isaac M. Milbank and R. W. Milbank were named as the obligors therein, and the new mortgage was to be void and of no effect when the condition of the new bond was complied with and performed. There was some delay in executing the new bond and mortgage owing to the difficulty of then communicating with said R. W. Milbank.

The new bond was executed by the said Isaac M. Milbank and Robert W. Milbank, and the new mortgage was executed by said R. W. Milbank and his said wife; and the execution thereof was duly acknowledged by them on the 17th of May, 1873, and were

on the same day delivered to Judge LAWRENCE as the attorney of and for the plaintiffs.

Both mortgages conveyed, by way of mortgage, the same property, and by the same descriptions, and the new mortgage was recorded in the office of the clerk of Dutchess county, on the 20th of May, 1873, at nine o'clock A. M., in liber 145 of mortgages, at page 108, etc.

The said second bond and mortgage were not executed and delivered as a substitute for or in lieu of, nor were they accepted by the plaintiff as a substitute for or in lieu of, the said first bond and mortgage. The first bond and mortgage were not surrendered by the plaintiff, but, on the contrary, they continued to remain in the possession and custody of Judge LAWRENCE, as the attorney of the plaintiff, until about the time of, and just prior to, the commencement of this action, when the plaintiff took possession of them and delivered them to the attorneys herein with a view to the commencement of this action.

That the defendant Brookman, in an action in which he was plaintiff, recovered a judgment in this court in Kings county on the 27th of November, 1869, against said R. W. Milbank and others, for the sum of $4,619.63 damages and costs. Appeals were taken to the General Term and to the Court of Appeals, in each of which the judgment was affirmed.

On the 11th of April, 1873, transcripts of said judgments were filed in the office of the clerk of Dutchess county, and each of said judgments was docketed in his said office.

Said Brookman, on the 21st of June, 1873, assigned the said three judgments to the defendant William Fullerton. The said William Fullerton, on the 30th of October, 1873, transferred to the defendant John Green an undivided one-half interest in the said three judgments.

The referee found, as conclusion of law, that the mortgage described in the complaint was a valid subsisting security, and that the lien thereof on the property mortgaged thereby was prior, in point of time and right, to that of either of the said three judgments.

*Julien T. Davies*, for the appellants, Lanier, Fullerton and Green.

*Everett P. Wheeler*, for the respondent.

GILBERT, J. :

The general principle, that an agreement in writing to give a mortgage, or a mortgage defectively executed, or an imperfect attempt to create a mortgage, or to appropriate specific property to the discharge of a particular debt, will create a mortgage in equity which will have preference over subsequent judgment creditors, seems to be firmly established in England and in this country. It is founded on the maxim that a court of equity looks upon things agreed to be done as actually performed. (See note to *Russell* v. *Russell,* 1 L. C. E , 666 ; *Taylor* v. *Wheeler,* 2 Vern., 564 ; *Burn* v. *Burn,* 3 Ves., 582.) In *Morse* v. *Faulkner* (1 Anst., 14), it was held to be clear that where there is an agreement to convey or a defective conveyance by a person then actually having title, that would be such an equity as would bind the lands in the hands of the heir. This principle was applied by Chancellor KENT in *Wadsworth* v. *Wendell* (5 J. Ch., 230). A judgment creditor stands in no better position in such a case than an heir. He is in no sense a *bona fide* purchaser, but stands in the shoes of his debtor in respect to such a transaction, and can claim only the rights of the latter against one whose right accrued by virtue of an agreement made before the recovery of the judgment. ( *White* v. *Carpenter,* 2 Paige, 217 ; *Arnold* v. *Patrick,* 6 id., 310 ; *Siemon* v. *Schurck,* 29 N. Y., 598.)

It is urged that this case is not within the principle stated, for the reason that the plaintiff parted with no present consideration at the time and on the faith of the agreement to give the mortgage. The referee has, in substance, found the fact to be otherwise, and we agree with him that such is the proper conclusion to be drawn from the evidence. The previous indebtedness of Milbank was extinguished, and that was not only a sufficient but a valuable consideration. In most cases, it is true, equitable mortgages which have been upheld, have been created to secure an advance of money or of credit made at the time, or of advances to be made in future and actually made, and not as security for an antecedent indebtedness. In the case of *Burn* v. *Burn* (*supra*), however, an agreement to give a mortgage for an antecedent indebtedness was held to create a specific lien, and was preferred to the assignees of the equitable mortgagor and his general cred-

itors. This doctrine was evidently approved by the chancellor in *The Matter of Howe* (1 Paige, 125). (See, also, *Chase* v. *Peck*, 21 N. Y., 581; *Lanning* v. *Tompkins*, 45 Barb., 309.) These cases, we think, are decisive of this question, and we agree in the principle on which they rest. A debtor has the right to appropriate his property to the payment of one debt in preference to another; and where he has made an agreement to secure a particular creditor by mortgage, on the faith of which the creditor has acted to his prejudice, unless the agreement be sustained, but before a formal mortgage has been executed another creditor has recovered a judgment, we do not perceive any equitable reason for preferring the legal lien of the latter to the prior equitable claim of the former. The agreement to give the mortgage being fair and *bona fide*, the right of the party claiming the benefit of it is equal to that of a judgment creditor, and, being prior in time, should have precedence over the latter.

That Milbank agreed to give a mortgage we think is clear. His offer, and the acceptance of it by the plaintiff, constituted a valid agreement upon mutual considerations.

Independently of the foregoing views, we think the referee correctly decided that there was a valid delivery of the bond and mortgage first executed by Milbank as early as April 3, 1873. That was several days before the judgment creditors acquired their liens, and was an attempt made in good faith by Milbank to perform his previous agreement to make a mortgage. The plaintiff received the bond and mortgage, and its acceptance thereof will be presumed from the beneficial nature of the security, in the absence of proof that it rejected them. (*Spencer* v. *Carr*, 45 N. Y., 406.)

The efforts made by the bank to get the additional security which the name of Milbank's brother afforded, and the subsequent taking of another bond and mortgage for that purpose, and having the latter mortgage recorded, without relinquishing the securities first given, in our opinion, did not alter the equitable rights of the parties.

The judgment must be affirmed with costs.

Present — GILBERT and DYKMAN, JJ. BARNARD, P. J., not sitting.

Judgment affirmed with costs.